23

FILED

2013 NOV 27 PM 1:08

U.S. BANKRUPTCY
DISTRICT . . . . . .

1  Michael Forakis
   Christine Forakis
2  In Pro Per
   346 East Palm Lane
3  Phoenix, AZ 85004

4

5

6

7

8

9

10

11             IN THE UNITED STATES BANKRUPTCY COURT

12                 FOR THE DISTRICT OF ARIZONA

13

14  In re:                              Chapter 11 Proceedings

15  **MICHAEL R FORAKIS and**           Case No.: 2:13-bk-10962-GBN

16  **CHRISTINE FORAKIS,**

17       Debtors.

18

19

20

21                      FIRST AMENDED
                   PLAN OF REORGANIZATION
22                          OF
                   DEBTORS-IN-POSSESSION
23

24                  MICHAEL R FORAKIS and
                     CHRISTINE FORAKIS
25

26                 Dated: November 27, 2013

27

28

29

MICHAEL R FORAKIS and CHRISTINE FORAKIS ("Debtors") propose the following Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code. All creditors are encouraged to consult the Disclosure Statement filed herewith before voting to accept or reject this Plan. The Disclosure Statement contains a discussion of the Debtors' history, a summary analysis of this Plan and other relevant financial information.

## ARTICLE I
### DEFINITIONS

A- SCOPE OF DEFINITIONS

For purposes of this Plan, except as expressly provided or unless the context otherwise requires all capitalized terms not otherwise defined shall have the meanings assigned to them in this Article I of the Plan. Whenever the context requires, such terms shall include the plural and the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. A term used in this Plan and not defined herein, has the meaning ascribed to such term in the Code or Rules.

B- DEFINED TERMS

The following terms have the following meanings whenever used in this Plan.

1.     Allowed Administrative Claim;  An Allowed Claim for payment of an administrative expense of a kind specified in §503(b) of the Code and referred to in §507(a)(2) of the Code, including without limitation:

(a)     The actual and necessary costs and expenses of preserving the Debtors' estate and of operating the business of the Debtors (other than such Claims or portions thereof which, by their express terms, are not due or payable on the Effective Date);

(b)     The full amount of all Claims for allowance of compensation or reimbursement of costs and expenses for legal, accounting or other professional services under Section 330 or Section 503(b) of the Code, or otherwise allowed by the Court;

(c)     All fees and charges assessed against the Debtors' estate under Chapter 123 of Title 28, United States Code; and

(d)     Expenses incurred by the Debtors in connection with this case, including expenses incurred in obtaining Confirmation of this Plan.

2.     Allowed Claim or Allowed Interest:  Allowed Claim or Allowed Interest means a Claim against or Equity Security Claim in the Debtors to the extent that: (a) a proof of such Claim or interest was (i) timely filed; (ii) deemed filed pursuant to Section 1111(a) of the Code; or (b)(i) which is not a disputed Claim, or (ii) which is allowed (and only to the extent allowed) by a Final Order.

3.     Bankruptcy Code:  Bankruptcy Code is the Bankruptcy Reform Act of 1978 (the "Code"), sometimes referred to as the Bankruptcy Code of 1978, as contained in Title11 U.S.C. Section 101 et seq., and all amendments thereto.

4.     Bar Date:     The Order and Notice of Time Within Which To File Proofs Of Claim And For Hearing On Disclosure Statement entered on _____ ("Order And Notice re Bar Date") established the Bar Date as the date of the Court's approval of the Disclosure Statement.  Notice of that Order And Notice re Bar Date was given to all Creditors and other parties in interests in these proceedings.  A separate Bar Date may apply to Claims arising out of the rejection of executory contracts and unexpired leases specified in Article VII of the Plan or to deficiency Claims arising out of the abandonment of collateral to previously Secured Creditors, or arising out of orders granting relief from the provisions of Section 362 of the Code.

5.     Business Day:     A day that is not a Saturday, Sunday or federal holiday recognized by the federal courts for the District of Arizona or Arizona state holiday recognized by the federal courts for the District of Arizona.

6.     Chapter 11:     Chapter 11 of the Bankruptcy Code.  References to section numbers are references to sections in the Bankruptcy Code, 11 U.S.C. Section 101 et seq., Public Law 95-598, effective October 1, 1979, as amended, unless otherwise specified.

7.     Claim:     A Claim is a right to payment from the Debtors, which is evidenced by a timely filed proof of claim or application for payment which is allowed by the Court, or if a proof of claim is not filed, a right which otherwise appears in the

applicable schedules of the Debtors and (1) is not listed as disputed, contingent or unliquidated, or (2) has been resolved by Final Order of the Court pursuant to the terms of the Plan.

8.    Claims of the Estate:    Claims of the Estate means all asserted and unasserted Claims of the Debtors, existing prior to Confirmation, against anyone.

9.    Class:    Any Class into which allowed claims or Allowed Interests are classified pursuant to Article IV.

10.    Confirmation:    Entry by the Court of an Order Confirming the Plan at or after a hearing held pursuant to Section 1128 of the Code.

11.    Confirmation Hearing:    The hearing to be held by the Court to determine whether or not the Debtors' Plan meets the requirements of Chapter 11 of the Code and is entitled to Confirmation.

12.    Confirmation Order:    Confirmation Order means an order of the Court confirming the Plan. The date the Confirmation Order is entered on the clerk's docket is the Confirmation Date.

13.    Court:    The United States Bankruptcy Court, District of Arizona, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

14.    Creditors:    Creditors are all Creditors of the Debtors holding allowed Claims for debts, liabilities, demands or Claims of any character whatsoever, as defined in Section 101(4) of the Bankruptcy Code.

15.    Debtor:    The Debtors JAY LLOYD CANTIBEROS and PAMELA LEE CANTIBEROS are Arizona residents.

16.    Disclosure Statement: The Disclosure Statement submitted with the Plan pursuant to Bankruptcy Code §1125 in its present form or as it may be altered, amended or modified from time to time.

17.    Disputed Claim:    Claims against the Debtors (a) which are scheduled by the Debtor as disputed contingent or unliquidated on or before the Effective Date, or (b) as to which an objection has been filed on or before the Effective Date or such other date as set by the Court for filing objections to claims, by a party in interest and which

objection has not been withdrawn or resolved by entry of a Final Order on or before the Effective Date.

18.     Effective Date:     The first Business Day following the thirtieth day after entry of a Final Order confirming the Plan.

19.     Filing Date:     November 16, 2011 the date of the filing of the Chapter 11 Petition in this case by JAY LLOYD CANTIBEROS and PAMELA LEE CANTIBEROS.

20.     Final Order:     A Final Order is an Order of the Court which, not having been reversed, modified or amended, and not being stayed, and the time to appeal from which or to seek review or certiorari or rehearing of which having expired, and from which no such appeal, review, certiorari or rehearing is pending, has become conclusive of all matters adjudicated thereby and in full force and effect.

21.     Final Order Confirming Plan: The Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Code and is entitled to Confirmation.

22.     Petition Date: The 16th day of November, 2011.

23.     Plan:     The Plan of Reorganization in its present form, or as it may be amended, supplemented or modified.

24.     Priority Claims: Any Claim entitled to priority pursuant to Section 507(a) of the Code.

25.     Pro Rata: The proportion that the amount of a Claim against the Debtors in a particular class bears to the aggregate amount of all Claims (including undetermined Claims until disallowed) in such class.

26.     Property of the Debtors:     The property of the Debtors as provided for in Bankruptcy Code § 541.

27.     Property or Properties:     All property of the estate of the Debtors as previously or hereafter determined by Final Order of a Court of competent jurisdiction and/or as defined in Section 541 of the Code, including, but not limited to, any and all Claims or causes of action in favor of the Debtors against third parties (except as otherwise provided herein).

28.     Reorganized Debtors: The Debtors and their successors and assigns

29.     Unsecured Tax Claims:     Any unsecured Claim for taxes entitled to priority pursuant to Section 507(a)(8) of the Code.

30.     Unsecured Claims:     All Creditors, other than taxing entities, having Claims against the Debtor which are not Secured Claims.

31.     Unsecured Creditors:     All Creditors of the Debtors holdings Claims for unsecured debts, unsecured liabilities, unsecured demands or Unsecured Claims of any character whatsoever, except Claims entitled to priority pursuant to Section 507 of the Code and Claims of Equity Security Holders.

## ARTICLE II

### CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to the Plan:

1.     Class of Claims and Payment:     Various classes of Claims are defined in the Plan.  The Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to Section 502(a) of the Code.  However, only those Claims allowed pursuant to Section 502(a) of the Code will receive payment under the Plan.

2.     Modification of the Plan.     The Plan may be modified upon application of the Debtors or corrected prior to Confirmation, without notice or hearing, and without any additional Disclosure Statement, pursuant to Section 1125 of the Code, provided that the Court finds that such modification does not materially or adversely affect any Creditor or class of Creditors or other parties in interest.

3.     Preserved Liens:     To the extent required under Section 1124(2) of the Code, to preserve the rights of a Creditor having a Secured Claim dealt with pursuant to that Section, the lien or encumbrance of that Creditor shall, to the extent valid, be preserved.

4.     Securities Laws:     Any satisfaction provided to any Creditor or other party in interest pursuant to the Plan which may be deemed to be a security, is exempt

from registration under certain state and federal securities laws pursuant to Section 1145 of the Code.

    5.    Time for Filing of Claims:    The list of Creditors filed in these proceedings by the Debtor shall constitute the filing of a Claim by each Creditor which is not listed as disputed, contingent or unliquidated as to amount, but the Debtors reserve the right to object to any such Claim where it appears that the amount scheduled by the Debtors are improper or where there is some dispute with regard to that Claim. All other Creditors, or Creditors who disagree with the amounts as scheduled by the Debtors must have filed a Claim by _____ unless a separate Bar Date applies for the rejection of the executory contracts and unexpired leases under the Plan or where there exists deficiency claims arising out of the abandonment of collateral to previously Secured Creditors or as a result of the granting of an order for relief from the provisions of Section 362 of the Code.

## ARTICLE III

### BASIS OF THIS PLAN

    Debtors' Chapter 11 Plan is predicated on their retaining the real and personal properties on restructured loan terms or in accordance with contract terms and conditions and to earn sufficient future income committed to the payment of the amount to be distributed to their unsecured creditors and the restructured or contract loans.

    Funds to be used to make payments under the Plan shall be obtained from the Debtors' future income derived from their respective employment and potential rental income from a parcel of real property located in Payson, Arizona.

    The Debtors own two parcels of real property. The property in Payson, Arizona is used as a rental. The Debtors sources of income are from the rental received from one of the parcels of real property plus the income derived from their respective employers. Due to the present day economic conditions the values of Debtors' real properties have been substantially reduced and all real properties have secured loans against them in the approximate appraised value of said properties.

    After reviewing their financial condition and the then prevailing economic conditions the Debtors who had executed personal guarantees for entities which they

owned believed it was in their best interest and the best interest of their creditors to reorganize pursuant to the provisions of Chapter 11 of the Code. Based upon such belief the Debtors have proposed a Plan that will treat their creditors and interest holders as follows:

Administrative claimants and other priority claimants will be paid one hundred (100%) percent of their allowed claims which includes payment of unpaid taxes, if any, in accordance with the provisions of the Code or in such other manner as they may otherwise agree.

The creditors secured by real property shall receive the allowed amounts of their secured claims in accordance with the Treatment provided in ARTICLE V hereof – Treatment of Claims.

The creditors secured by personal property shall receive the contract amount of their respective claims with modified terms as provided in ARTICLE V hereof – Treatment of Claims.

Unsecured claims shall receive an amount equal to an amount greater than they would have received if Debtors had filed for relief under Chapter 7 in 60 equal monthly installments calculated pursuant to the terms of Section 1325 (b)(2) as required by the Code, without interest, commencing on the first day of the month following the Effective Date of the Plan.

Debtors as the interest holders will pursuant to § 1129(a)(15) and (b)(2)(B)(ii) of the Code retain their interest in all estate property in consideration of their funding of the Allowed Claims and shall receive all exempt property.

THE FOREGOING DISCUSSION IS ONLY A BRIEF SUMMARY OF THE PLAN AND ALL PARTIES SHOULD REVIEW THE FULL CONTEXT OF THE PLAN.

# ARTICLE IV
# HISTORY OF THE DEBTOR

1. History of the Debtor

Debtors are employed by local business entities of which they are the controlling parties. Mr. Forakis is employed by USA Screenprint, L.L.C., an Arizona limited liability company and Mrs. Forakis is employed by the Forakis Law Firm, P.L.C., an Arizona professional limited liability company.

Mr. Forakis was raised in Salt Lake City, Utah and at the time he came to Phoenix in 2001 was the vice president of operations for Coca-Cola Enterprises. After arriving in Phoenix he left Coca-Cola Enterprises and acquired USA Screenprint, L.L.C. and has managed and operated said company since such acquisition. He presently manages and operates the company as his primary source of income.

Mrs. Forakis is an Arizona native and has lived nearly all her life in Phoenix and the Phoenix area. She is the controlling party in the Forakis Law Firm, P.L.C. and earns her income through said firm.

Mr. and Mrs. Forakis in the operation of their respective businesses have separately and jointly executed personal guarantees for the business known as USA Screenprint. This business was negatively affected by the economic downturn suffered in Arizona and the nation and in early 2011 the Debtors determined that USA Screenprint should file for relief under Chapter 11 of the United States Bankruptcy Code despite the Debtors' personal guaranty's referred to above. USA Screenprint's Chapter 11 Plan has been confirmed and a Final Decree has been entered in its Chapter 11 case. Subsequent to the Final Decree, litigation was commenced on one of the guaranties and threats have been made with regard to other personal guarantees. The Debtors have been unable to negotiate a satisfactory settlement and they deemed it to be in their best interest and the interests of their creditors to seek relief under the provisions of Chapter 11.

2. Events leading to the Chapter 11 Filing.

As stated above Debtors found themselves in a difficult financial position when the economic downturn substantially reduced the value of their properties and the value

of the properties in entities which they owned. In addition the Debtors had executed several personal guarantees and litigation had been commenced on one such guaranty and threats of litigation have also been received.

As indicated, it was apparent to the Debtors that it was necessary to seek the protection of Chapter 11 of the Code in order to allow the Debtors to reorganize.

4. Events Subsequent to Filing this Case.

A. REPRESENTATION Debtors determined that they would represent themselves in this case.

B. CREDITORS' COMMITTEE On August 18, 2013 the United States Trustee filed its Statement concerning the inability to appoint a Committee of Unsecured Creditors.

C. FILING SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS The Schedules and Statement of Financial Affairs of the Debtor were filed by Debtors on the 26th day of June, 2013.

D. FIRST MEETING OF CREDITORS A First Meeting of Creditors was held on the 31st day of July, 2013 before Patty Chan of the Office of the U.S. Trustee and was continued to the 29th day of August, 2013 at which time the meeting was concluded.

E. PERIODIC REPORTS. The Debtors filed their Periodic Reports Regarding Value, Operations and Profitability of Entities in which the Debtors Estate holds a substantial and controlling interest on the 2nd day of August, 2013.

F. STATUS HEARING. A Chapter 11 Status hearing was held on August 23, 2013. The Status Hearing was continued to November 19, 2013 at 9:30 a.m. and subsequently to

G. AMENDED SCHEDULES. Debtor filed Amendments to their Schedules on August 29, 2013.

H. DISMISSAL AND REINSTATEMENT. An Order dismissing the case against both Debtors was entered on the 17th day of September 2013 for failure to pay the filing fee. The case was reinstated upon proof of payment of said fee.

I. STIPULATION. A Stipulation regarding Plan Treatment and to valuate the first lien encumbering Real Property located at 114 North Rim Trail Road, Payson,

AZ was entered into by and between the Debtors and Green Tree Servicing, LLC. The Stipulation has been submitted to the Court and is awaiting court approval.

J. <u>DISCLOSURE STATEMENT AND PLAN</u>. Debtors filed their Plan and Disclosure Statement on the 27th day of November, 2013.

## ARTICLE V
## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan provides for the separate classification of all claims against and interests as follows.

2. Priority Claims

Section 507 of the Bankruptcy Code identifies certain types of Claims entitled to payment with priority over all other unsecured claims. Certain of the priority claims must be paid in full on the Effective Date of the Plan, pursuant to section 1129(a)(9)(A) and (B) of the Bankruptcy Code, or consent to an alternative payment schedule, in order for a plan to be confirmed. The Plan defines the following classes of such claims and provides for the manner of payment.

Class 1A - Allowed claims for Domestic Support Obligations

Class 1B – Administrative Expenses Fees and Charges Specified in Section 507 (a)(2)

Class 1C – Allowed Claims Entitled to Priority under Section 507(a)(3)

Class 1D – Allowed Claims Entitled to Priority under Section 507(a)(4)

Class 1E – Allowed claims Entitled to Priority under Section 507(a)(5) and (6)

Class 1F – Allowed claims Entitled to Priority under Section 507(a)(7)

Class 1G – Allowed claims Entitled to Priority under Section 507(a)(8)- Taxes

Class 1H - Allowed claims Entitled to Priority under Section 507(a)(9) and (10)

Class 2A –Allowed Secured Claim of Chase Home Finance LLC secured by a first lien on real property located at 7130 E Saddleback Road, Mesa, Arizona

Class 2B –Allowed Secured Claim of Green Tree secured by a first lien on real property located in Payson, Arizona

Class 2C –Allowed Secured Claim of OCWEN secured by a second lien on real property located at 7130 E Saddleback Road, Mesa, Arizona

Class 2D – Allowed Secured Claim of Robin Arce secured by a first lien on a 1998 Porsche Boxter

Class 2E – Allowed Secured Claim of Wells Fargo secured by a first lien on a 2002 BMW X5

Class 3A – General Unsecured Creditors

Class 4A – Allowed Claim of Interest Holder

## ARTICLE VI
## TREATMENT OF ALLOWED CLAIMS

2. Class 1A <u>Domestic Support Obligations</u>

The Debtors believe that there are no Domestic Support Obligations.

2. Class 1B <u>Administrative Claims</u>

The Plan classifies all administrative Claims and expenses allowable under §503(b) and entitled to priority under §507(a) (2) as Class 1B  Administrative Claims, as defined in §503 of the Code.  These claims consist of the actual, necessary costs and expenses of preserving the Estate, including taxes incurred, salaries or commissions for services rendered after the commencement of the case, fees of professionals employed by Debtors, and fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code.

Under §1129(a)(9)(A), Administrative Claims must be paid in full on the Effective Date or consent to a different payment plan in order for a Plan to be confirmed. The Plan complies with this requirement by providing that Class 1A Claims will be paid in full on the Effective Date of the Plan, or upon allowance, whichever occurs first,

except to the extent a holder of an administrative Claim otherwise agrees. Amounts due to holders of Class 1A Claims will be funded from the moneys being provided by the Debtors from future rental income and salaries.

Debtors anticipate that the allowed administrative expenses will accrue during these proceedings and will be payable on the Effective Date of the Plan. The Debtors have represented themselves and performed their own accounting services and therefore do not anticipate expenses to be in excess of $10,000.

Because the Plan provides for payment in full of Class 1B Claims as of the Effective Date or as otherwise agreed, the Class 1B Claims are not impaired.

3. Class 1C Claims Under Section 502(f)

Debtors believe that there are no 502(f) claims.

4.   Class 1D. Wage Claims

The Plan classifies Claims for wages entitled to priority under §507(a)(4) as Class 1D Claims. Such Claims include Claims for wages, salaries, and commissions, including severance, sick pay and vacation leave, to the extent the Claims were incurred within the 180-day period immediately prior to the bankruptcy filing. The amount of each such Claims entitled to priority is limited to $10,950 per Claimant. Claims for wages outside the 180 day period or in excess of the dollar amount limitation are classified as General Secured Claims, in Class 3A.

Under Section 1129(a)(9)(B) of the Bankruptcy Code, Claims for wages entitled to priority must be paid in full in order to confirm a Plan. Debtors believe that there are no Wage Priority Claims.

5.   Class   1E.   Allowed   Claims   Entitled   to   Priority   Under   Section 507(a)(5)(6).

After payment of Allowed Secured Claims and Allowed Administrative Claims specified in §507(a)(1), (a)(2), (a)(3) and (a)(4) of the Bankruptcy Code, Allowed Claims entitled to priority under Sections 507(a), (5), and (6) of the Bankruptcy Code, if any, shall be paid in full and in cash on the Effective Date. The Debtors do not believe there are any Class 1E Claims.

6.  Class 1F. Deposit Claims

The Plan classifies Claims for consumer deposits entitled to priority under §507(a)(7) as Class 1F Claims. Under this provision of the Bankruptcy Code, a Claim is entitled to priority treatment if it arises from the deposit of money by the Claimant with a Debtor in connection with the purchase of property or services for the use of the Claimant. The amount entitled to priority is limited to $2,100 per Claim. Claims for customer deposits outside the Code definition or in excess of the dollar limitation are classified in the Plan as General Unsecured Claims, in Class 3A.

Under §1129(a)(9)(B) of the Bankruptcy Code, Claims for consumer deposits entitled to priority must be paid in full on the Effective Date as a condition to confirmation. Debtors do not believe that there are any Deposit Claims.

7. Class 1G. Tax Claims

The Plan classifies Claims for taxes entitled to priority under §507(a)(8) as Class 1G Claims. Under Section 1129(a)(9)(C), Claims for taxes entitled to priority must be paid in full in regular installment payments in cash over a period not later than 5 years after the Order for Relief in Order to Confirm a Plan.

The Plan provides for payment in full of Class 1G Claims and complies with the requirements of §1129(a)(9)(C).

Because the Plan provides for payment in full of Class 1G Claims and complies with the requirements of §1129(a)(9)(C), holders of Class 1G Claims are not considered a voting class pursuant to §1123(a)(1).

8. Class 1H.   §507(a)(9) and (10) Claims

The Debtors believe there are no §507(a)(9) and (10) Claims.

9. Class 2A – Allowed Secured Claim of Chase Home Finance, LLC ("Chase")

With respect to Chase's claim, secured by a first lien on property located at 7130 E Saddleback Road, Mesa, Arizona, the Debtors shall pay Chase in accordance with the terms of their contract and therefore Chase is not an impaired creditor.

10. Class 2B – <u>Allowed Secured Claim of Green Tree Servicing ("Green Tree")</u>

This class consists of the Allowed Secured Claim held by Green Tree and secured by property located at 114 North Rim Trail Road, Payson, AZ 85541 and legally described as

> All that certain real property in the County of Gila, State of Arizona, described as follows:
> Lot 28 Rim Trail Mountain Club Tract Plat 2, according to Map No. 97, records of Gila County, Arizona

The parties entered into a Stipulation regarding Plan Treatment and to valuate the first lien encumbering the described real property

11. Class 2C – <u>Allowed Secured Claim of OCWEN</u>

With respect to OCWEN claim, secured by a second lien the Debtors' property located at 7130 E Saddleback Road, Mesa, Arizona, the Debtors shall pay OCWEN in accordance with the terms of their contract and therefore OCWEN is not an impaired creditor.

12. Class 2D – <u>Allowed Secured Claim of Robert Arce ("Arce")</u>

With respect to Arce's claim, secured by a first lien on the 1998 Porsche Boxter, Debtors shall pay a sum equal to the amount owed on the contract upon the Effective Date over a period of five (5) years in 60 equal monthly installments bearing interest at the rate of 5% per annum with payments of the amount commencing on the 1st day of the month following the Effective Date of the Plan.

13. Class 2E – <u>Allowed Secured Claim of Wells Fargo</u>

With respect to Wells Fargo claim, secured by a first lien on the 2002 BMWX5, the Debtors shall pay the contract amount owed in full pursuant to the contract between Debtors and Wells Fargo and therefore Wells Fargo is not an impaired creditor.

14. Class 3A – <u>General Unsecured Creditors</u>

Creditors with general unsecured claims shall be paid a distribution of $14,808.00 which is in excess of the amount such creditors would have received if Debtors had filed for relief under Chapter 7 of the Code and complies with the provisions

of Section 1325(b)(2) of the Code. Said sum will be paid in 60 equal monthly installments, without interest commencing on the Effective Date of The Plan.

15. Class 4A – <u>Allowed Claim of Interest Holders</u>

Pursuant to § 1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, Debtors shall retain their interest in all estate property in consideration of their funding of Allowed Claims and shall receive all exempt property.

CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN IN FULL. CREDITORS AND INTEREST HOLDERS ARE FURTHER URGED TO CONSULT WITH COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN

## ARTICLE VII
### SATISFACTION OF CLAIMS

1       <u>Satisfaction</u>: All Creditors, Equity Security Holders and other parties in interest who have or assert Claims in any class shall, upon Confirmation of this Plan, be deemed to have acknowledged that their respective Claims are fully satisfied by the distribution provided herein, each of which Claims, whether known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, is declared and shall be, for all purposes, upon the entry of the Order confirming this Plan, satisfied in full.

## ARTICLE VIII
### UNEXPIRED LEASES AND EXECUTORY CONTRACTS

1.       <u>Assumption</u>: All leases, wherein the Debtors are the lessor, are hereby assumed, however, the assumption of such leases shall not act as a bar to the assertion by the Debtor of a breach of any such lease by the lessor.

2.       <u>Cure of Defaults</u>: Upon Confirmation, the Court shall provide that any contract affirmed pursuant to this Article VII or previously assumed pursuant to Section 365 of the Code, will be in force upon cure of any defaults requiring cure under Section 365 of the Code.

3. Claims After Rejection: Any Creditor who wishes to assert a Claim due to the rejection of any executory contract or unexpired lease must file said Claim with the Court within thirty (30) days after Confirmation.

## ARTICLE IX
### FUNDING IMPLEMENTATION

1. Plan Funding: The Debtors shall be able to meet the obligations provided for in this Plan from the proceeds of the rental properties and their respective salaries as more specifically described in the Disclosure Statement filed contemporaneously herewith.

## ARTICLE X
### PRESERVATION OF BANKRUPTCY CAUSES OF ACTION

1. Preservation: Any and all causes of action which the Debtor may have or which may arise under any of the provisions of the Code or which may be enforceable under any of the provisions of the Code or any other law or statute, shall be preserved and this Court shall retain jurisdiction to dispose of such causes of action. All such causes of action shall belong to the Debtors as a part of the assets retained by them.

## ARTICLE XI
### GENERAL PROVISIONS

1 No Additional Charges: Except as expressly stated in this Plan, or as allowed by Court Order, no interest, penalty, late charge or additional charges (such as attorney's fees) shall be allowed on any Claim subsequent to the Filing Date.

2 Remedies to Cure Defects: After Confirmation, the Debtors may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation of this Plan, in such a manner as may be necessary to carry out the purpose and the intent of this Plan.

3    Discharge:    Nothing in this Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of this Plan in Section 1141 of the Code. Except as otherwise provided in this Plan or in the Order confirming this Plan, such Confirmation Order acts as of the Effective Date as a discharge, of any and all debts of the Debtors that arose at any time before the entry of the Confirmation Order, including, but not limited to, all principal and any and all interest accrued thereon, pursuant to Section 1141(d)(1) of the Code. The discharge of the Debtors shall be effective as to each Claim, regardless of whether a proof of claim thereof was filed, whether the Claim is an Allowed Claim or whether the holder thereof votes to accept this Plan.

4.    Release of Liens and Interests. Unless otherwise provided in this Plan or in the Order confirming this Plan, all creditors possessing Allowed Secured Claims shall retain their liens on any of their collateral the Reorganized Debtor acquires as the result of confirmation of this Plan to secure payment of all cash or other property to be distributed to them on account of those liens pursuant to the terms of this Plan. Such liens on the Reorganized Debtors' property shall be deemed relinquished and reconveyed to the Reorganized Debtors upon the payment to the holders of such liens of all money or property due them in satisfaction of their Allowed Secured Claims according to the terms of this Plan.

5.    Stay and Enforcement of this Plan. The automatic stay of § 362(a) of the Bankruptcy Code shall terminate when all orders necessary to the confirmation of this Plan become Final Orders. Although confirmation of this Plan may not discharge the Debtors pursuant to Section 1141 of the Bankruptcy Code, the Reorganized Debtor in only assuming the obligations set forth in this Plan in the amounts so specified herein and the Reorganized Debtors are only obligated and liable to make payment of such amounts in the manner set forth by and pursuant to the terms of this Plan. The Reorganized Debtors are not liable to any holders of Allowed Claims and Allowed Interests except as specifically provided for by the terms of this Plan when confirmed by Order of the Bankruptcy Court. If and only if the Reorganized Debtor fails to comply with the provisions of this Plan, the Holders of Claims in any class may proceed against the

Reorganized Debtors and their property in order to enforce this Plan under Federal or State Law, in Bankruptcy Court, or any other Court of competent jurisdiction, and in the case of Secured Creditors in accordance with any applicable and existing mortgage, deed of trust, security agreement, or other lien instrument.

6. <u>Disputed Claims and Appeals</u>. Where timely objections are made to any Claim in any Class, to any Priority Claim, or to any Claim for administrative expenses, or any motions or proceedings are filed in regard to any lien, claim or privilege, any cash payments due such Claimant shall be held by the Reorganized Debtors in a separately segregated interest bearing bank account, subject to the Bankruptcy Court's jurisdiction. For purposes of distribution to creditors, calculations shall be made as if a Disputed Claim becomes an Allowed Claim. Distributions shall be made to the holder of such claim to the extent such distributions have already been made to Holders of Allowed Claims generally, if the objection to the Claim is overruled and the Disputed Claim becomes an Allowed Claim.

7. <u>Tax Considerations</u>. The Debtors do not know of and shall not make any representations about any possible tax consequences that may affect creditors. Federal income tax consequences may result to particular creditors. Certain types of creditors may be subject to special rules that cannot be addressed herein. There may also be state, local or foreign tax considerations applicable to each creditor.

EACH CREDITOR IS URGED TO CONSULT HIS OR HER OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THIS PLAN FOR HIM, HER OR IT UNDER FEDERAL, STATE AND LOCAL TAX LAW.

8 <u>Headings</u>: Paragraph headings have been inserted in the Plan for the convenience of the reader. Such headings shall not serve in any way to limit or modify the provisions of the paragraph.

# ARTICLE XII

## REORGANIZED DEBTORS

A- FEASIBILITY

   1. <u>Description of Debtors' Assets</u>

     The assets of the Debtors are listed on the Debtors' Schedules filed with the Court.

   2. The Debtors believe that the Plan satisfies the requirements of 11 U.S.C. §1129(a)(ii) of the Code and that the Disclosure Statement and its Exhibits demonstrate that Confirmation of the Plan is not likely to be followed by the liquidation of or need for further reorganization of the Reorganized Debtors.

B- CONFIRMATION OVER DISSENTING CLASS

     The Bankruptcy Code contains provisions for confirmation of a plan even if the Plan is not accepted by all impaired classes, so long as at least one impaired class of claims has accepted it. These ""cram-down"" provisions for confirmation of a plan, despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in 11 U.S.C. §1129(b) of the Bankruptcy Code.

     If a Class of secured Claims rejects the Plan, the Plan may still be confirmed so long as the Plan does not discriminate unfairly as to a Class and is "fair and equitable" to such Class under 11 U.S.C. §1129 (b) of the Bankruptcy Code and applicable case law. 11 U.S.C. Section 1129 (b) of the Bankruptcy Code states that the "fair and equitable standard may require, among other things, that the Plan provide (i) that the lien securing the Claims of members of the Class is to be left in place and the holders of the Claim will receive deferred cash payments of a present value equal to the lesser of the amount of such Claims or the value of the collateral securing such Claims; (ii) that the collateral securing the Claims be sold free of the lien with the lien attaching to the proceeds and with the lien on the proceeds being treated under one of the two other standards described in this paragraph; or (iii) a treatment for the Claim that is the "indubitable equivalent" of the Claim. The Debtors believe that the Plan satisfies the test and therefore that the Plan can be confirmed even if it is rejected by holders of

Secured Claims. If a Class of unsecured Claims rejects the Plan, the Plan may still be confirmed so long as the Plan is not unfairly discriminatory as to that Class and is "fair and equitable" to such Class. Under 11 U.S.C. §1129 (b) of the Bankruptcy Code, a Plan is "fair and equitable" as to a class if, among other things, the Plan provides that (i) each holder of a Claim included in the rejecting class receive or retain on account of that Claim property which has a value, as of the Effective Date, equal to the allowed amount of such Claim; or that (ii) the holder of any Claim or interest that is junior to the Claim of such Class will not receive or retain on account of such junior Claim or interest any property at all; or (iii) although not included in 11 U.S.C. §1129 (b) but as determined by case law that if a junior Claim receives or retains anything on account, even though the senior holder has not received a one hundred percent (100%) return, that a substantial new contribution, as determined by the Court, shall be made by the junior Claimant. The Debtors believe that the Plan meets this test as to all impaired Classes of unsecured Claims. Therefore the Debtor believes the Plan could be confirmed even if it is rejected by the Classes of unsecured Claims as long as at least one impaired Class accepts the Plan.

With respect to a Class of interests, such interest holders may not receive any distribution or retain any value on account of such interests unless all Classes of creditors have been paid in full or that a substantial new contribution, as determined by the Court, shall be made by any interest holder retaining any distribution or value on account of such interests in the event all classes of creditors have not been paid in full. This is not applicable in this Case since all Approved Claims will be paid in full.

## ARTICLE XIII
### JURISDICTION OF THE COURT

1.    Reinvestment of Title and Retention of Jurisdiction: On Confirmation, the Debtors shall be reinvested with its assets, subject only to the terms of the Plan and the liens of the Secured Creditors described herein. The Debtors shall be entitled to manage their affairs, subject to the limitations set forth herein, without further order of the Court.

Subject to such limitations, the Court will retain jurisdiction until the Plan has been fully consummated for certain purposes, including, but not limited to:

2.    The Classification of a Claim of any Creditor, the re-examination of any Claim which has been allowed for the purposes of voting and the determination of such objections as may be filed to any Claim: The failure by the Debtors to object to or to examine any Claim for the purposes of voting, shall not be deemed a waiver of the Debtors' right to object to or reexamine the Claim in whole or in part. If a Creditor does not file a Claim in these proceedings, the Debtor may object to the amount scheduled as owing to that Creditor, in whole or in part. If any objection to a Claim is filed, no payment will be made with respect to such Claim until a determination on such objection has been made by the Court.

3.    Disputed Claims; Objections to Claims: Any party in interest may file an objection to any claim within ninety (90) days from the Effective Date. Objections not filed within such time shall be deemed waived.

If any Claim or any portion thereof is challenged by objection, the Debtors shall segregate and set aside funds, consistent with the Plan, sufficient to satisfy the Claim as filed, or as scheduled by the Debtor. When an objection to a Claim has been resolved, distribution shall be made accordingly.

4.    Title to and Liens Against Assets: Determination of all questions and disputes regarding title to and liens on the assets of the Debtors and determination of all causes of action, controversies, disputes or conflicts whether or not subject to an action pending as of the date of Confirmation, between the Debtors and any other party, including, but not limited to, the right of the Debtors to recover assets pursuant to the provisions of the Code.

5.    Correction of Defects: Correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or in the Confirmation as may be necessary to carry out the purposes and intent of the Plan.

6.    Modification:  After Confirmation, the Debtors may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or

in the Confirmation in such manner as may be necessary to carry out the purposes and effect of the Plan.

7. <u>Enforcement</u>:   To enforce and interpret the terms and conditions of the Plan.

8. <u>Further Orders</u>: Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtors and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Court may deem necessary.

9. <u>Conclusion</u>:   Entry of an order concluding and terminating this case.

RESPECTFULLY SUBMITTED this 27th day of November, 2013.

By: _____
Michael Forakis

By: _____
Christine Forakis